## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| AARON SHEPPARD, | Civil No. 11-2398 (NLH/KMW) |
| Plaintiff, | |
| v. | OPINION |
| OFFICER JEFFREY ZAVIS, et al., | |
| Defendants. | |

**APPEARANCES:**

Aaron Sheppard #470464
East Jersey State Prison
Lock Bag R
Rahway, New Jersey 07065
    *Pro Se Plaintiff*

Paola F. Kaczynski, Esquire
William J. Ferren & Associates
1500 Market Street Suite 2920
Philadelphia, Pennsylvania 19102
    *Attorney for Defendants Officer Jeffrey Zavis and
    County of Gloucester*

**<u>HILLMAN, District Judge</u>**

This matter comes before the Court by way of Defendants
Officer Jeffrey Zavis and the County of Gloucester's motion [Doc.
No. 3] to dismiss Plaintiff's amended complaint pursuant to
Federal Rule of Civil Procedure 12(b)(6).  Plaintiff did not file
opposition to the motion, and the time for filing opposition has
expired.  The Court has considered Defendants' motion and decides
this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendants' motion is
granted in part, and denied in part.

I.   **JURISDICTION**

Plaintiff Aaron Sheppard, an inmate incarcerated at East Jersey State Prison, brings this civil rights complaint against Defendants Officer Jeffrey Zavis and the County of Gloucester ("the County"), pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J. STAT. ANN. § 10:6-1 et. seq. (See Ex. A to Notice of Removal, Pl.'s First Am. Compl. [Doc. No. 1] (hereinafter, "Am. Compl."), ¶ 1.)  The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

II.  **BACKGROUND**

A.   **Procedural History**

Plaintiff filed the initial complaint in this action on approximately August 23, 2010 in the Superior Court of New Jersey, Law Division for Mercer County.  (Notice of Removal [Doc. No. 1] ¶¶ 1-2.)  Subsequently, in January of 2011, Plaintiff filed a motion to waive filing fees and costs, and to have the Mercer County matter re-docketed in the Superior Court of New Jersey, Law Division for Gloucester County.  (Id. ¶ 3.) Plaintiff also filed an amended complaint in the Gloucester County action.  (Id.)  It appears that Defendants were not served with a copy of either the original complaint filed in Mercer

2

County or the amended complaint filed in Gloucester County until approximately April 11, 2011.  (Id. ¶¶ 5-6; see also Ex. D to Notice of Removal, Letter from Plaintiff dated March 30, 2011 [Doc. No. 1] 1.)

Upon receiving service of the amended complaint, Defendants learned that Plaintiff was asserting federal claims in this action under Section 1983, and thereafter, Defendants removed the action from the Superior Court of New Jersey to this Court pursuant to 28 U.S.C. §§ 1331, 1441(a)-(b), 1446(b).  (See Notice of Removal [Doc. No. 1] ¶¶ 9-12.)  After removal, the Court screened Plaintiff's amended complaint pursuant to 28 U.S.C § 1915A(b) and found that sua sponte dismissal of the amended complaint was not warranted at that time.  (Order [Doc. No. 2] ¶ 2, May 3, 2011.)  Plaintiff's amended complaint originally named the following Defendants: (1) the Sheriff of the Gloucester County Jail; (2) Corrections Officer Jeffrey Zavis; (3) the Medical Staff of the Gloucester County Jail; (4) Corrections Officers John Doe A thru Z; and (5) Medical Staff members John and Jane Doe 1 thru 2.  (Am. Compl. ¶ 4.)

By Order dated May 3, 2011, the Court dismissed the Sheriff and the Medical Staff of the Gloucester County Jail without prejudice as Defendants in this action.  (Order [Doc. No. 2] ¶ 2, May 3, 2011.)  With respect to the Sheriff of the Gloucester County Jail, the Court found that the amended complaint failed to

3

allege facts sufficient to "show that the Sheriff, through his or her own actions, violated Plaintiff's rights under 42 U.S.C. § 1983." (Id.)  As to the Medical Staff at the Gloucester County Jail, the Court determined that the allegations of the amended complaint did not demonstrate "that the Medical Staff [was] deliberately indifferent to Plaintiff's medical needs under 42 U.S.C. § 1983" because Plaintiff received medical care at Underwood Memorial Hospital. (Id. ¶ 4.)  The Court then added the County as a Defendant in this action pursuant to the New Jersey Tort Claims Act, N.J. STAT. ANN. § 59:1-1 et. seq. (Id. ¶¶ 2,5.)

### B.   Plaintiff's Allegations

In the amended complaint, Plaintiff asserts that he "was remanded from" East Jersey State Prison to the Gloucester County Jail on July 20, 2009 in order to appear on a motion for post-conviction relief pending in the Superior Court of New Jersey, Law Division for Gloucester County. (Am. Compl. ¶ 5.)  Plaintiff represents that upon arriving at the Gloucester County Jail, "he was provided with minimal bedding, cosmetics and other items" from jail officials. (Id. ¶ 7.)  On the following day, July 21, 2009, Plaintiff appeared before the Law Division regarding the motion for post-conviction relief. (Id. ¶ 6.)

Plaintiff alleges that following his court appearance, he "was escorted by various Gloucester County Jail officials[,]"

4

including Defendant Zavis, back to the Gloucester County Jail in order to be "'out-processed' and returned to East Jersey State Prison." (Id. ¶ 6.)  According to Plaintiff, he departed the housing unit of the Gloucester County Jail and "began out-processing at approximately 2:10 p.m." at which time another prisoner asked Plaintiff for a small pillow Plaintiff was going to return to jail officials. (Id. ¶ 7.)  Plaintiff represents that while he was "under Defendant Zavis' supervision[,]" Plaintiff handed the pillow to the other prisoner and departed the housing unit. (Id. ¶ 8.)  Plaintiff was then allegedly handcuffed and escorted to an elevator by Defendant Zavis and "at least one other Correction officer[.]" (Id.)  Plaintiff alleges that while being escorted to the elevator, Defendant "Zavis stopped Plaintiff in the hallway, and absent any provocation, threat or physical assault made by Plaintiff, [Defendant] Zavis pushed Plaintiff against the wall and tackled him to the ground." (Id.)

Plaintiff contends that Defendant Zavis then began "pummeling Plaintiff in the chest, shoulders, and face to the point where Plaintiff was injured and stunned into submissiveness."[1] (Id. ¶ 9.)  As alleged in the amended complaint, Defendant Zavis then "grabbed" Plaintiff by the

---

1. Plaintiff asserts that he was "too dazed to recall whether" the other corrections officer took part in the assault. (Am. Compl. ¶ 9.)

5

handcuffs around his wrists, "roughly pushed" Plaintiff onto the elevator, and proceeded to take Plaintiff down to the "'Strip Search' room" where Defendant Zavis and the corrections officer were joined by at least two additional corrections officers. (Id. ¶¶ 9-10.)  Plaintiff asserts that Defendant Zavis and the unknown corrections officer Defendants[2] then began "slapping and punching Plaintiff" while he was still handcuffed, without "any provocation, threat or physical assault" by Plaintiff.  (Id. ¶ 10.)  Plaintiff contends that he was on the floor, in the fetal position in an effort to protect his head during the assault which lasted approximately five to seven minutes.  (Id. ¶ 11.) After the "beating stopped," Plaintiff saw a pool of blood on the floor and realized the blood was originating from injuries to his head.  (Id.)

According to Plaintiff, once Defendant Zavis and the other corrections officer Defendants "realized the severity of Plaintiff's injuries, ... Defendants pulled back, quietly spoke to each other, and rushed Plaintiff to the jail's Medical Department."  (Id. ¶ 12.)  Plaintiff alleges that different officers from the New Jersey Department of Corrections' ("DOC") Central Transport Unit were present at the Gloucester County Jail's Medical Department and observed Plaintiff's injuries,

_____

2.  Plaintiff refers to these Defendants as John Does A, B, and C in the amended complaint.  (Am. Compl. ¶ 10.)

whereupon the Central Transport Unit officers "refused to accept [Plaintiff] for transport back to East Jersey State Prison until Plaintiff" received medical treatment.  (Id. ¶ 13.)  It appears from the amended complaint that Plaintiff's injuries could not be treated at the Gloucester County Jail's Medical Department, and "due to the serious nature of Plaintiff's injuries[,]" Plaintiff was treated at Underwood Memorial Hospital.  (Id. ¶¶ 14-15.) Plaintiff represents that a nurse at Underwood Memorial Hospital's Emergency Room "cleaned and sutured Plaintiff's head and other lacerations, ... wrapped his injuries, and released Plaintiff to the Gloucester County [Jail] Corrections officers." (Id. ¶ 15.)

After being treated at Underwood Memorial Hospital, Plaintiff asserts that he returned to the Gloucester County Jail and was placed in a detention cell pending the issuance of "disciplinary charges from Defendant Zavis."  (Id. ¶ 16.) Specifically, Plaintiff alleges that Defendant Zavis "filed false charges against Plaintiff for fighting, threatening [Defendant] Zavis, and refusing an order by [Defendant] Zavis."  (Id. ¶ 18.) Once these charges were issued, Plaintiff represents that he was transferred to the Central Transport Unit and returned to East Jersey State Prison.  (Id. ¶ 17.)  However, Plaintiff contends that DOC Hearing Officer John Oszvart "adjudicated Plaintiff NOT GUILTY of the false charges filed by" Defendant Zavis, just over

one week later on July 29, 2009.  (Id. ¶ 19.)

Based on these facts, Plaintiff claims that Defendant Zavis "violated Plaintiff's constitutional rights by beating Plaintiff without cause and by knowingly filing false disciplinary charges against Plaintiff to cover up the attack."  (Id. ¶ 24.) Plaintiff also claims that the County[3] and the John Doe corrections officer Defendants "violated Plaintiff's constitutional rights by failing to protect Plaintiff from the violent attack by Defendant Zavis, and by encouraging and engaging in a cover-up of Zavis' illegal acts."  (Id. ¶ 25.)

Construing Plaintiff's amended complaint liberally, he appears to assert claims for excessive force and malicious prosecution against Defendant Zavis, claims for excessive force against the John Doe corrections officer Defendants, a claim for failing to intervene against the John Doe corrections officer Defendants, conspiracy claims pursuant to 42 U.S.C. § 1985 against the County and the John Doe corrections officer Defendants, and a claim for failure to protect Plaintiff from Defendant Zavis against the County and the John Doe corrections officers Defendants. (Id. ¶¶ 24-26, 27(a)-(c).)

---

3.  To the extent Plaintiff asserts claims against the Gloucester County Jail, the Court notes that a jail is not considered a "person" purposes of Section 1983, and therefore the Court construes these claims as being made against the County.  See Street v. Atl. Cnty. Justice Facility, No. 09-6062, 2012 WL 273787, at *4 (D.N.J. Jan. 31, 2012).

8

Based on these allegations Plaintiff seeks a "declaratory judgment, finding that his constitutional right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment was violated by all Defendants[.]" (Id. ¶ 27.) Plaintiff also seeks $100,000.00 in punitive damages from Defendant Zavis for filing false disciplinary charges and $10,000.00 in punitive damages from the County and the John Doe Defendant corrections officers.

## III. <u>DISCUSSION</u>

At this time, Defendants seek dismissal of Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Although Plaintiff did not file opposition to the present motion, "the Court must address unopposed motions to dismiss a complaint on the merits." <u>Estate of Casella v. Hartford Life Ins. Co.</u>, No. 09-2306, 2009 WL 2488054, at *2 (D.N.J. Aug. 11, 2009) (citing <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (3d Cir. 1991)). Thus, in considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the

9

claim showing that the pleader is entitled to relief." FED. R.
CIV. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claims[.]'"
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting
Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft
v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly
expounded the pleading standard for 'all civil actions[.]'")
(citation omitted). First, under the Twombly/Iqbal standard, a
district court "must accept all of the complaint's well-pleaded
facts as true, but may disregard any legal conclusions." Fowler
v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing
Iqbal, 129 S. Ct. at 1949).

Second, a district court "must then determine whether the
facts alleged in the complaint are sufficient to show that the
plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d
at 211 (citing Iqbal, 129 S. Ct. at 1950). "[A] complaint must
do more than allege the plaintiff's entitlement to relief."
Fowler, 578 F.3d at 211; see also Phillips v. County of
Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's
Twombly formulation of the pleading standard can be summed up
thus: 'stating ... a claim requires a complaint with enough
factual matter (taken as true) to suggest' the required element.

10

This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S. at 556). "The defendant bears the burden of showing that no claim has been presented." Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

However, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Phillips, 515 F.3d at 245; see also Burrell v. DFS Servs., LLC, 753 F. Supp. 2d 438, 444 (D.N.J. 2010) ("When a claim is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), leave to amend and reassert that claim is ordinarily granted. ... A claim may be dismissed with prejudice, however, if amending the complaint would be futile.") (citation omitted).

## IV. **ANALYSIS**

In the present motion, Defendants assert that Plaintiff's complaint must be dismissed for failure to state a claim upon which relief can be granted and rely on three main arguments. Initially, Defendants assert that the amended complaint only seeks punitive damages and declaratory relief, but fails to allege a claim for compensatory or nominal damages. (Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Am. Compl. [Doc. No. 4]

11

(hereinafter, "Defs.' Mem."), 3.)   Thus, Defendants argue that Plaintiff's amended complaint must be dismissed in its entirety because under New Jersey law punitive damages cannot be awarded in the absence of an award of compensatory damages, and because punitive damages are not an appropriate form of relief in actions seeking a declaratory judgment.  (Id.)

Additionally, Defendants contend that Plaintiff's claims against the County must be dismissed because a municipal entity cannot be held liable under Section 1983 on a theory of respondeat superior.  (Id. at 4.)   Defendants argue that Plaintiff cannot establish liability on the part of the County because "there is no allegation in the [amended] Complaint which could suggest that Plaintiff's rights were violated pursuant to any act by a Gloucester County official, or that such act [was] a custom or practice of the County[.]"  (Id.)  Finally, Defendants assert that Plaintiff's complaint must be dismissed because it fails to indicate that Plaintiff exhausted his administrative remedies pursuant to the Prison Litigation Reform Act of 1995. (Id.)  Specifically, Defendants assert that while the amended complaint references the filing of a Notice of Tort Claim under New Jersey law and then a law suit, the amended complaint "makes no mention of going through the administrative procedures at the prison" and "must therefore be dismissed for failure to exhaust administrative remedies."  (Id. at 5.)

12

### A.   Sufficiency of Plaintiff's Allegations on Damages

According to Defendants, because Plaintiff only requests punitive damages and declaratory relief in the amended complaint and fails to seek compensatory damages, dismissal of Plaintiff's Section 1983 claims is warranted.  (Id. at 3.)  In support of this argument, Defendants assert that punitive damages cannot be awarded in the absence of a compensatory damages award and also are not an appropriate form of relief in a declaratory judgment action.  (Id.)  As set forth below, the Court rejects Defendants' argument and denies the motion to dismiss on that basis.

As a preliminary matter, federal common law, as opposed to state law, governs the issue of damages in an action brought under Section 1983.  See Basista v. Weir, 340 F.2d 74, 86-87 (3d Cir. 1965) (recognizing that on a cause of action under Section 1983 "the federal common law of damages commands the issue").  Thus, to the extent Defendants rely on Cooper Distributing Co. v. Amana Refrigeration, Inc., 63 F.3d 262 (3d Cir. 1995) and Pitts v. Newark Board of Education, 766 A.2d 1206 (N.J. Super. Ct. App. Div. 2001), these cases are distinguishable from the case at bar.

Although Defendants correctly cite these cases for the general proposition that New Jersey law prohibits the recovery of punitive damages where an award of compensatory damages is lacking, neither of these cases involved a claim for punitive damages brought under Section 1983 for the alleged deprivation of

13

federal constitutional rights.  See, e.g., Cooper Distrib. Co. v. Amana Refrigeration, Inc., 63 F.3d 262, 274, 281-82 (3d Cir. 1995) (sitting in diversity, the Third Circuit applied New Jersey law in reversing a $3 million punitive damage jury award on a claim for tortious interference with prospective business advantage where the jury failed to award any compensatory damages on that claim); Pitts v. Newark Board of Education, 766 A.2d 1206, 1210 (N.J. Super. Ct. App. Div. 2001) (reversing s $10,000 punitive damage jury award on plaintiff's defamation claim under New Jersey law because the jury awarded no compensatory damages on that claim).  Thus, these cases are not instructive on the issue of permitting punitive damages under Section 1983 in the absence of compensatory or nominal damages under federal law. Despite Defendants' argument to the contrary, these cases are not binding on this Court and do not support dismissal of the amended complaint.

Moreover, federal common law specifically permits the recovery of punitive damages in cases brought under Section 1983 regardless of whether other damages have been awarded, and the propriety of a such an award, even in the absence of an award of compensatory or nominal damages, has previously been recognized by the Third Circuit.  See Alexander v. Riga, 208 F.3d 419, 430 (3d Cir. 2000) (explaining it is "beyond a doubt, [that] punitive damages can be awarded in a civil rights case where a jury finds

a constitutional violation, even when the jury has not awarded compensatory or nominal damages") (citing Basista v. Weir, 340 F.2d 74, 87 (3d Cir. 1965) for the proposition that "punitive damages [are] appropriate in section 1983 case absent [an] award of compensatory damages").  Multiple federal circuit courts of appeals similarly permit punitive damage awards under Section 1983 even without an award of compensatory or nominal damages. See, e.g., Cortes-Reyes v. Salas-Quintana, 608 F.3d 41, 53 (1st Cir. 2010) ("We have recently determined that in a section 1983 action, a jury may properly award punitive damages even if it awards no nominal or compensatory damages.) (citation omitted); Calhoun v. DeTella, 319 F.3d 936, 942 (7th Cir. 2003) ("nothing prevents an award of punitive damages for constitutional violations when compensatory damages are not available.") (citing Erwin v. Cnty. of Manitowoc, 872 F.2d 1292, 1299 (7th Cir. 1989)); Cush-Crawford v. Adchem Corp., 271 F.3d 352, 358 (2d Cir. 2001); Baltezore v. Concordia Parish Sheriff's Dep't, 767 F.2d 202, 208 n.6 (5th Cir. 1985) (commenting that "it is settled that punitive damages may be awarded in a section 1983 action even without a showing of actual loss by the plaintiff if the plaintiff's constitutional rights have been violated.").  Accordingly, Defendants' argument that Plaintiff's amended complaint must be dismissed because it only seeks punitive

damages and fails to alleged compensatory damages lacks merit.[4]

Further, the Court rejects Defendants' narrow reading of the amended complaint.  While the amended complaint does not specifically use the term "compensatory" damages, the amended complaint does clearly allege elsewhere that Plaintiff suffered physical injuries from the incident involving Defendant Zavis and the John Doe corrections officer Defendants which required medical treatment.  (Am. Compl. ¶¶ 13-15, 26.)  Specifically,

---

4.  Defendants also argue in passing that Plaintiff cannot seek punitive damages in this action because he seeks a declaratory judgment.  (Mem. in Supp. 3.)  As set forth below, Defendants' argument fails here because Plaintiff is not actually seeking a declaratory judgment.
    A declaratory judgment is "[a] binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement.  Declaratory judgments are often sought, for example, by insurance companies in determining whether a policy covers a given insured or peril." BLACK'S LAW DICTIONARY 859, (8th ed. 2004).  Although Plaintiff's amended complaint couches his request for relief as one for a "declaratory judgment", this is a term of art, and an liberal reading of Plaintiff's pro se pleading demonstrates that Plaintiff is not in fact seeking a declaratory judgment.
    Plaintiff's amended complaint alleges as follows: "Plaintiff seeks declaratory judgment, finding that his constitutional right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment was violated by all Defendants[.]" (Am. Compl. ¶ 27.)  It appears to the Court that Plaintiff, appearing pro se and untrained in the law, did not appreciate the meaning of the term "declaratory judgment" — as he does not ask for a binding adjudication of his legal rights in relation to those of Defendants.  Removing the term "declaratory judgment" from the above allegation, it is clear that Plaintiff's suit simply seeks a legal determination that his constitutional rights were violated, making his claims typical of those brought under Section 1983.  Accordingly, Defendant's assertion that punitive damages are not an appropriate form of relief in a declaratory judgment action is not relevant in this instance.

Plaintiff asserts that he "has permanent scar tissue on his face and head, and has suffered from headaches and other medical and psychological infirmities." (Id. ¶ 26.) Construing Plaintiff's amended complaint liberally in light of his pro se status, the Court concludes that Plaintiff's allegations regarding his injuries can reasonably be considered as Plaintiff's attempt to seek compensatory damages for actual losses he may have sustained. While the Court denies Defendants' motion to dismiss regarding the need for compensatory and nominal damages to recover punitive damages, the Court will also grant Plaintiff leave to file a second amended complaint to clarify his allegations regarding damages. To the extent Plaintiff may seek compensatory damages in this action, he shall set forth that request and the basis for that request in his second amended complaint.[5]

## B.   Failure to State a Claim for Monell Liability

Defendants also seek to dismiss Plaintiff's claims against

_____

5. Although the Court rejects Defendants' argument seeking to dismiss the amended complaint based on the sufficiency of Plaintiff's punitive damages allegation, the Court notes that Plaintiff can only seek to recover punitive damages from the individual Defendants in this case and not from the County. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) (holding that "a municipality is immune from punitive damages under 42 U.S.C. § 1983.") Accordingly, to the extent Plaintiff alleges a claim for punitive damages against the County, the Court grants Defendant's motion in part and this claim will be dismissed with prejudice.

the County for failure to state a claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  As Defendants contend here, the County cannot be held liable for the alleged actions of Defendant Zavis or the John Doe corrections officer Defendants because, "a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Marvel v. Cnty. of Delaware, 397 F. App'x 785, 790 (3d Cir. 2010) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)).

Accordingly, "there are two ways that a plaintiff can establish municipal liability under § 1983: [either] policy or custom."  Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007).  "Under Monell, a plaintiff shows that a policy existed when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  Watson, 478 F.3d at 155 (citation and internal quotations omitted).  Alternatively, "[a] plaintiff may establish a custom ... by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.  In other words, custom may be established by proving knowledge of, and acquiescence to, a practice."  Id. at 155-56 (citation and internal quotations omitted).  "In addition to proving that an unlawful policy or custom existed, a plaintiff also bears the burden of proving that such a policy or custom was

the proximate cause of the injuries suffered." Id. at 156.

With respect to the County, Plaintiff's primary allegation is that "Defendants Gloucester County ... and John Does (A to Z) violated Plaintiff's constitutional rights by failing to protect Plaintiff from the violent attack by Defendant Zavis, and by encouraging and engaging in a cover-up of Zavis' illegal acts." (Am. Compl. ¶ 25.)  Based on this particular allegation, even accepting Plaintiff's factual assertions as true and viewing them in the light most favorable to Plaintiff, the amended complaint, as currently plead, fails to identify any policy or custom on the part of the County that would support a Section 1983 claim for liability under Monell.  Moreover, the amended complaint similarly fails to demonstrate how any such policy or custom was the proximate cause of Plaintiff's alleged injuries.  Therefore, the Court grants Defendants' motion on this issue and will dismiss Plaintiff's claims against the County without prejudice at this time.

However, it appears that the failure of the amended complaint outlined above resulted from the manner in which Plaintiff grouped together both the County and the John Doe Defendants in making his allegations.  In light of Plaintiff's pro se status, the Court must construe the amended complaint liberally.  In doing so, the potential exists that if Plaintiff parsed out his claims against the County from those against the

19

John Doe corrections officer Defendants, Plaintiff may be able to properly allege a policy or custom on the part of the County regarding its failure to protect prisoners from attacks by corrections officers or "encouraging" the cover-up of such attacks.  Specifically, based on Plaintiff's assertions that the County failed to protect him and then conspired to cover up this incident, it is not inconceivable that Plaintiff could, by way of amendment, sufficiently allege that the County was on notice of Defendants' violent propensities and engaged in a cover up of a pattern of constitutional violations by the individual Defendants.  Such an allegation is not inconceivable and could demonstrate that the County had knowledge of, and acquiescence to, this pattern of conduct.

Accordingly, while Plaintiff's claim against the County are subject to dismissal without prejudice under Rule 12(b)(6) at this time, the Court will permit Plaintiff the opportunity for a curative amendment and grant Plaintiff thirty (30) days to file a second amended complaint in this action.  For the reasons set forth <u>supra</u>, the Court finds that amendment would not be inequitable or futile here.  <u>See</u> <u>Phillips</u>, 515 F.3d at 245.

### C.   Exhaustion of Administrative Remedies

Finally, Defendants argue that Plaintiff's amended complaint must be dismissed based on Plaintiff's failure to exhaust administrative remedies under the Prison Litigation Reform Act

because the amended complaint "makes no mention of going through the administrative procedures at the prison."  (Defs.' Mem. 5.) The Prison Litigation Reform Act ("PLRA") provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

As recognized by the Third Circuit, "[u]nder the Prison[] Litigation Reform Act, a prisoner must exhaust available administrative remedies before bringing suit concerning prison conditions." Daniels v. Rosenberger, 386 F. App'x 27, 29 (3d Cir. 2010) (citing 42 U.S.C. § 1997e(a)).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Moreover, exhaustion of remedies under the PLRA is required, and a prisoner's failure to exhaust such remedies directs dismissal of the claims.  Concepcion v. Morton, 306 F.3d 1347, 1352, 1355 (3d Cir. 2002).

While the exhaustion of administrative remedies is a mandatory prerequisite to the filing of a Section 1983 action by

21

a prisoner, "failure to exhaust is an affirmative defense under

the PLRA, and ... inmates are not required to specially plead or

demonstrate exhaustion in their complaints." Wallace v. Kato,

549 U.S. 199, 216 (2007).  Rather, the burden of proving a

prisoner's failure to exhaust administrative remedies is on the

defendants.  Accolla v. United States Gov't, 369 F. App'x 408,

410 (3d Cir. 2010) (citing Ray v. Kertes, 285 F.3d 287, 295 (3d

Cir. 2002)); see also Mitchell v. Horn, 318 F.3d 523, 529 (3d

Cir. 2003) ("Failure to exhaust administrative remedies is an

affirmative defense for the defendant to plead.")

"Although failure to exhaust administrative remedies is

generally an affirmative defense to be pleaded by the defendant,

... a district court has the inherent power to dismiss sua sponte

a complaint ... which facially violates a bar to suit." Pena-

Ruiz v. Solorzano, 281 F. App'x 110, 112 n.3 (3d Cir. 2008).

Importantly, however, "failure to exhaust ... is only an

appropriate grounds for 12(b)(6) dismissal if the defect is

apparent from the face of the complaint[.]" Watson v. Sec'y

Pennsylvania Dep't of Corr., No. 10-2918, 2011 WL 2678920, at *6

n.5 (3d Cir. July 8, 2011) (citing Rycoline Prods., Inc. v. C & W

Unlimited, 109 F.3d 883, 886 (3d Cir. 1997)).  "To put it another

way, a prisoner-plaintiff need not plead exhaustion in the

complaint, but if he has clearly not exhausted his administrative

remedies, a defendant may establish that fact on a motion to

dismiss." <u>Ross v. Monge</u>, No. 07-2693, 2009 WL 1291814, at *3 (D.N.J. May 4, 2009).

In this case, a thorough review of Plaintiff's amended complaint makes clear that Plaintiff did not concede that he failed to exhaust his administrative remedies on the face of the complaint. (<u>See generally</u> Am. Compl.)  Also, there are no facts or allegations within the complaint which otherwise demonstrate to the Court that Plaintiff did not exhaust his administrative remedies prior to suit.  (<u>Id.</u>)  Therefore, sua sponte dismissal for failure to exhaust is not appropriate in this instance because Plaintiff's amended complaint does not facially violate a bar to suit.  <u>See</u> <u>Pena-Ruiz</u>, 281 F. App'x 110, 112 n.3 (3d Cir. 2008).  Under these circumstances, i.e., where a concession or other facial evidence demonstrating a failure to exhaust is lacking, the burden of proving Plaintiff's failure lies entirely with Defendants.

Defendants, though, have failed to satisfy that burden because they rely solely on the argument that Plaintiff did not affirmatively plead exhaustion in the amended complaint. Defendants' assertion -- that the amended complaint must be dismissed for failure to exhaust because it "makes no mention" of Plaintiff utilizing an administrative grievance procedure -- reflects a fundamental misunderstanding of the nature of this affirmative defense.  The Court rejects any attempt by Defendants

to shift their burden to Plaintiff because Plaintiff was not required to specifically plead or otherwise demonstrate that he exhausted administrative remedies prior to filing the present suit in the amended complaint.  See Wallace, 549 U.S. at 216 (recognizing that under the PLRA "inmates are not required to specially plead or demonstrate exhaustion in their complaints.").

Moreover, Defendants cannot satisfy their burden on this issue because they have not presented the Court with any other evidence even suggesting that Plaintiff actually failed to exhaust in this case.  See Ross, 2009 WL 1291814, at *3 (finding defendants could not prevail on affirmative defense of exhaustion where defendants "criticize[d] Plaintiff for failing to plead exhaustion" but did not provide information demonstrating plaintiff's failure beyond merely providing the prison's policies for inmate requests and complaints).  Here, Defendants have not provided the Court with any documentation or information regarding the nature of the alleged prison grievance procedure at issue, such as a prison inmate handbook or other policies and procedures for handling prisoner's complaints.  Therefore, at this time the Court is unable to assess whether such a procedure constitutes an administrative remedy which Plaintiff was required to exhaust under the PLRA.  Nor have Defendants made an adequate showing that any such procedures were properly made available to Plaintiff.  Simply, the Court lacks sufficient evidence to

evaluate the alleged administrative procedure, to ensure that it was properly disclosed to Plaintiff, and to determine that it satisfies the dictates of 42 U.S.C. § 1997e(a).  Defendants proffer no evidence as to whether Plaintiff actually followed or attempted to follow any prescribed procedures, and the Court cannot properly make this determination without evidence setting forth the prison's specific grievance procedures.  Cf. Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010) (recognizing that "the determination whether a prisoner properly exhausted a claim" can only be "made by evaluating compliance with the prison's specific grievance procedures.")

Accordingly, because Defendants have not satisfied their burden to demonstrate Plaintiff's failure to exhaust, the present motion to dismiss must be denied at this time.[6]

D.   **Leave to Amend**

For the reasons set forth supra, the Court grants Plaintiff leave to file a second amended complaint in this action addressing the deficiencies set forth in this Opinion within thirty (30) days of the date of entry of this Opinion and its accompanying Order.  However, the Court notes that Plaintiff did

---

6.  To the extent Defendants have in their possession, or obtain through discovery, evidence which they believe demonstrates that Plaintiff failed to properly exhaust administrative remedies, the denial of the motion to dismiss on this issue does not preclude Defendants from moving for summary judgment on the same basis at a later date.

not oppose Defendants' motion to dismiss, and the docket further reflects that Plaintiff has not submitted any filings or otherwise attempted to contact the Court since his case was initially removed to this Court on April 27, 2011.  The Court notes that Plaintiff has a responsibility to litigate this case. Accordingly, Plaintiff is hereby on notice that if he fails to timely file a second amended complaint within thirty days, Plaintiff's complaint will be dismissed for failure to prosecute.

**V.**   **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss [Doc. No. 3] is granted in part, and denied in part.  Defendants' motion is granted to the extent Plaintiff seeks to recover punitive damages from the County, and any such claim by Plaintiff is dismissed with prejudice.  The motion is also granted to the extent Plaintiff seeks to impose Monell liability on the County, and those claims against the County are dismissed without prejudice.  Defendant's motion is denied in all other respects. Plaintiff is granted thirty (30) days leave to file a second amended complaint addressing the deficiencies set forth in this Opinion.  An Order consistent with this Opinion will be entered.


Dated: June 19, 2012            /s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.


26