UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____ :
                               :
AARON SHEPPARD,                :
                               :
          Plaintiff,           :      Civ. No. 11-2398 (NLH)
                               :
     v.                        :      OPINION
                               :
GLOUCESTER COUNTY SHERIFF, et al., :
                               :
          Defendants.          :
_____ :

APPEARANCES:
Jeffrey A. Carr, Esq.
301 Carnegie Center
Suite 400
Princeton, NJ 08543
     Counsel for Plaintiff

Randy Miller
Paola F. Kaczynski, Esq.
1500 Market St.
Suite 2920
Philadelphia, PA 19102
     Counsel for Defendant


HILLMAN, District Judge

     This matter comes before the Court by way of a motion (ECF
No. 87) by Defendants seeking partial summary judgment pursuant
to Federal Rule of Civil Procedure 56.  The Court has considered
the parties' submissions and decides this matter pursuant to
Federal Rule of Civil Procedure 78.

     For the reasons that follow, Defendants' motion for summary
judgment will be GRANTED in part and DENIED in part.

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his initial civil rights complaint pursuant to 42 U.S.C. § 1983 in New Jersey state court.  He later filed an Amended Complaint, also in state court.  On or about April 27, 2011, the matter was removed to this Court pursuant to 28 U.S.C. §§ 1331, 1441(a)-(b), 1446(b). (ECF No. 1).  This Court screened the Amended Complaint pursuant to 28 U.S.C. § 1915A(b) and found that sua sponte dismissal was not warranted at that time. (ECF No. 2).  In an Order dated May 3, 2011, Plaintiff's claims against the Sheriff of Gloucester County and the Medical Staff of the Gloucester County Jail were dismissed without prejudice; however, Plaintiff's claims were permitted to proceed against Corrections Officer Jeffrey Zavis and various John Doe Defendants. (Id.).  Thereafter, Defendants filed a Motion to Dismiss the Amended Complaint (ECF No. 3), which the Court granted in part and denied in part on June 19, 2012 (ECF No. 6). Per the Court's Order, Plaintiff was granted leave to amend his complaint and, on July 23, 2012, Plaintiff submitted a Second Amended Complaint (ECF No. 7).

On November 13, 2014, the Court granted Plaintiff's Motion to Amend his Complaint (ECF No. 50), and on January 5, 2015, Plaintiff filed a Third Amended Complaint (ECF No. 57) which substituted named defendants for the John Doe Defendants. Plaintiff's Third Amended Complaint names as defendants: (1)

Officer Jeffrey Zavis, Officers John Doe (A-Z); (3) John and/or Jane Doe (1-2); (4) County of Gloucester; (5) Officer Brad Schmidheiser; (6) Sgt. William Glaze; and (7) Sgt. Michael Hickman.[1]  In brief, Plaintiff alleges in his Third Amended Complaint that he was assaulted by correctional officers in the shower room of the Gloucester County Jail.  He brings federal and state law claims against the individual officers and against the County of Gloucester.

Defendants filed an Answer to the Third Amended Complaint on March 17, 2015. (ECF No. 17).  On March 31, 2015, Plaintiff was granted in forma pauperis status (ECF No. 67) and pro bono counsel was appointed on April 14, 2015 (ECF No. 69).  The parties engaged in discovery and, on February 26, 2016, Defendants filed a motion for partial summary judgment, which is presently before the Court. (ECF No. 87).

In their motion, Defendants seek dismissal of all claims — federal and state — against the County of Gloucester; and dismissal of Plaintiff's state law claims for negligence and gross negligence against the individual Defendants.  Plaintiff filed a brief in opposition (ECF No. 94) and the matter is now fully briefed.

---

[1] On April 9, 2015, the parties stipulated as to the dismissal of Defendant Carmel Morina. (ECF No. 68).

A. <u>Summary Judgment Record</u>

The following is a recitation of the record on summary judgment, and is compiled from the Statement of Material Facts submitted by the parties pursuant to Local Civil Rule 56.1. <u>See</u> (Defendants' Statement of Material Facts Not In Dispute, ECF No. 88) ("Defs.' SOMF"); (Plaintiff's Responses to Defendants' Statement of Material Facts, ECF No. 94-1) ("Pl.'s Resp. SOMF"); (Plaintiff's Supplemental Statement of Material Facts, ECF No. 94-2) ("Pl.'s Supp. SOMF").  Additionally, the Court has considered the Report of Findings and Conclusions submitted by Plaintiff's expert, Martin F. Horn (Opp'n, Ex. C 12, ECF No. 94-6) ("Horn Report"), as well as various other documents, reports and transcripts contained in the record.

Plaintiff, an inmate at East Jersey State Prison, was temporarily transferred to the Gloucester County Jail (the "Jail") to attend a matter involving post-conviction relief that was pending in Gloucester County.  At the Jail, Plaintiff was provided with bedding and other items pending his return to East Jersey State Prison.  On July 21, 2009, at approximately 2:14 p.m., Officer Jeffrey Zavis went to Housing Unit Pod 3-E (the "Pod") to take Plaintiff for "out-processing" in preparation for his return back to East Jersey State Prison.  Plaintiff began collecting his belongings, but gave his county-issued pillow to

another inmate.  The parties present different accounts of what happened next.

According to Defendants, Officer Zavis instructed Plaintiff to retrieve his pillow. (Defs.' Ex. A "Zavis Operations Report", ECF No. 88-1).  Defendants assert that Plaintiff then became verbally abusive and assumed a physically threatening posture. As a result, Officer Zavis restrained Plaintiff and Sgt. Glaze and Officer Schmidheiser came to his assistance. (Id.).  Because it was Jail policy to strip search an inmate after he had been involved in an altercation with a corrections officer, Plaintiff was escorted to a lower level to be strip searched. (Defs.' SOMF ¶ 6, ECF No. 88).  Defendants contend that no force was used in the strip search room. (Opp'n, Ex. I 80:5-8, Dep. Tr. Of Brad Schmidheiser, Sept. 22, 2015, ECF No. 94-12) ("Schmidheiser Tr.").  While Plaintiff was in the strip search room, the Defendant officers noticed that Plaintiff had a cut over his eye and Plaintiff was subsequently transported to the medical department, and then to an outside hospital for treatment. (Defs.' SOMF ¶ 7-8, ECF No. 88).

Plaintiff's version of the events is as follows.  After giving away his pillow, Plaintiff realized himself that he would need it for out-processing and, thus, needed to retrieve it. (Pl.'s Supp. SOMF, ¶ 7).  Plaintiff denies becoming belligerent, verbally abusive, or aggressive toward Officer Zavis. (Id. at ¶

9, 11-12).  Despite the fact that he did not provoke the officer, Plaintiff states that Officer Zavis shoved him against a wall, threw him on the floor, and handcuffed him. (Id. at ¶ 14).  At that point, Sgt. Glaze and Officer Schmidheiser came to Officer Zavis's assistance and held Plaintiff's head against the floor while he was being handcuffed. (Id. at ¶ 15).  Defendants maintained holds on Plaintiff while they transported him to a lower level in the elevator.  Plaintiff states that he did not resist and was compliant. (Id. at ¶ 19).  Plaintiff was brought into the shower room for his strip search, a room without video cameras. (Opp'n, Ex. D 49:2-3, Dep. Tr. Of Jeffrey Zavis, Sept. 22, 2015, ECF No. 94-7) ("Zavis Tr."). Plaintiff contends that, during the strip search, he was thrown into a wall, held against a bench, and beaten on his back and ribs. (Pl.'s Supp. SOMF, ¶ 20).  Plaintiff states that he lost consciousness and woke up bleeding on the floor. (Id. at ¶ 21).  After the strip search, Plaintiff was taken to the medical area where his wound was treated.  He was then transported to an outside hospital where he received a CAT scan, a CT scan, x-rays, and he received 10 stitches/staples for a 2.5 centimeter laceration over his eye. (Opp'n, Ex. K 2-5, Pl.'s Medical Records, ECF No. 94-14).

II.  STANDARDS OF REVIEW

A. Summary Judgment

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).  Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L.Ed.2d 731 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could

reasonably find for the non-moving party. <u>Boyle v. Cnty. of
Allegheny Pennsylvania</u>, 139 F.3d 386, 393 (3d Cir. 1998)
(quoting <u>Anderson</u>, 477 U.S. at 252).  "Where the record taken as
a whole could not lead a rational trier of fact to find for the
nonmoving party," no genuine issue for trial exists and summary
judgment shall be granted. <u>Matsushita Elec. Indus. Co. v. Zenith
Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538
(1986) (citation omitted).

This Court exercises subject matter jurisdiction over
Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and
exercises supplemental jurisdiction over Plaintiff's state law
claims pursuant to 28 U.S.C. § 1367.

B. <u>42 U.S.C. § 1983</u>

A plaintiff may have a cause of action under 42 U.S.C. §
1983 for certain violations of his constitutional rights.
Section 1983 provides, in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> ... subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper
> proceeding for redress[.]"

42 U.S.C. § 1983.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must
allege a person acting under color of state law engaged in

8

conduct that violated a right protected by the Constitution or laws of the United States." Morrow v. Balaski, 719 F.3d 160, 165-66 (3d Cir. 2013) (citing Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000)).  The Court's "'first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to [then] determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Morrow, 719 F.3d at 166 (quoting Nicini, 212 F.3d at 806); see also West v. Atkins, 487 U.S. 42, 48 (1988).

   C. Monell Claims

      In Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court established that municipalities and other government entities were "persons" subject to liability under 42 U.S.C. § 1983 for constitutional rights violations, but that they were not liable under the doctrine of respondeat superior for the misconduct of its employees. Monell, 436 U.S. at 690-692, 98 S. Ct. 2018; see also City of Oklahoma City v. Tuttle, 471 U.S. 808, 810, 105 S. Ct. 2427, 85 L.Ed.2d 791 (1985).  To prevail on a Monell claim, a plaintiff must first establish that the municipality had a policy or custom that deprived him of his constitutional rights. McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir.

1996)).  In other words, the plaintiff must show that the
municipality, through one of its policymakers, affirmatively
proclaimed the policy, or acquiesced in the widespread custom,
that caused the violation. Watson v. Abington Twp., 478 F.3d
144, 155-156 (3d Cir. 2007).

A plaintiff may show the existence of a policy when a
decision-maker with final authority issues an official
proclamation, policy, or edict. Bielevicz v. Dubinon, 915 F.2d
845, 850 (3d Cir. 1990).  Custom may be established by showing
that a given course of conduct, "although not specifically
endorsed or authorized by law, is so well-settled and permanent
as virtually to constitute law." Id.; see also Watson, 478 F.3d
at 155-56; Natale v. Camden Cnty. Corr. Fac., 318 F.3d 575, 584
(3d Cir. 2003) (defining "custom" as "'an act that has not been
formally approved by an appropriate decisionmaker,' but that is
'so widespread as to have the force of law.'" (quoting Board of
County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404, 117
S. Ct. 1382, 137 L.Ed.2d 626 (1997))).

Once a § 1983 plaintiff identifies a municipal policy or
custom, he must "demonstrate that, through its deliberate
conduct, the municipality was the 'moving force' behind the
injury alleged." Brown, 520 U.S. at 404, 117 S. Ct. 1382; see
also Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir.
1984) (holding that proof of the existence of an unlawful policy

or custom is not enough to maintain a § 1983 action; instead a plaintiff must additionally prove that the policy or custom was the proximate cause of the injuries suffered); Watson, 478 F.3d at 156 (same).  If the policy or custom does not facially violate federal law, causation can be established only by "demonstrat[ing] that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.  A showing of simple or even heightened negligence will not suffice." Id. at 407, 117 S. Ct. 1382 (citations omitted); Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).

For a § 1983 claim of failure to train or supervise municipal employees, the plaintiff must show that the failure to provide training or supervision amounted to "'deliberate indifference' to the rights of persons with whom the employee will come into contact." Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014).  Deliberate indifference may be demonstrated by showing a pattern of violations which puts the municipal employee on notice that a new program is necessary; or a single incident violation where the need for training was patently obvious. Id. at 223.

III. <u>DISCUSSION</u>

A. <u>Claims against County of Gloucester</u>

Defendants first assert that all claims against the County of Gloucester (the "County") must be dismissed because Plaintiff has not adequately pled a cause of action under <u>Monell</u>. Specifically, Defendants point to paragraph 49 of the Third Amended Complaint, wherein Plaintiff states that, "the abuse to which Plaintiff was subjected was <u>contrary</u> to the customs[2], policies, and practices, as well as published rules of the County." (Third Am. Compl. 12, ECF No. 57) (emphasis added). Because Plaintiff alleges in the Third Amended Complaint that the abuse he suffered was contrary to the policies and practices of the County, Defendants conclude that Plaintiff has not alleged that the municipality had a policy that deprived him of

_____

[2] Plaintiff alleges in the Third Amended Complaint that the abuse he suffered was contrary to the customs, policies and practices of the County. (Third Am. Compl. ¶ 49, ECF No. 57). As noted above, a properly pleaded claim under <u>Monell</u> requires just the opposite — that the injury suffered is the result of a policy or custom. Nevertheless, the Court notes that Plaintiff's Third Amended Complaint was filed <u>pro</u> <u>se</u>. <u>Pro</u> <u>se</u> pleadings should be construed liberally in favor of the plaintiff. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). Therefore, although the precise wording of Plaintiff's allegations can be construed as self-defeating, the Court does not adopt this construction, nor do Defendants argue for such an interpretation. It is apparent from Plaintiff's Third Amended Complaint that Plaintiff means to assert that personnel at the Jail engaged in certain unconstitutional practices or customs, and that officials at the Jail tolerated and acquiesced this conduct. <u>See, e.g.,</u> (Third Am. Compl. ¶ 50-53, ECF No. 57).

his constitutional rights as required to assert a claim under Monell. See McTernan, 564 F.3d at 657.  Defendants next argue that Plaintiff has not presented evidence sufficient to show that his rights were violated by any custom or practice of the County.  Defendants rely on the Jail's "Use of Force policy and the training curriculum followed by its officers" in support of its contention that "there is no casual connection between any alleged custom or practice and any injury suffered by Plaintiff." (Mot. Summ. J. 8, ECF No. 89).

In opposition to Defendants' motion, Plaintiff asserts that there exists "ample evidence demonstrating that the officers acted pursuant to a county policy, or alternatively, an unwritten custom, in their treatment of" Plaintiff. (Opp'n 11, ECF No. 94).  Plaintiff then explains that there is a "two-path track to municipal liability under § 1983, depending on whether the allegation is based on municipal policy or custom." (Id. at 12) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)).  In sum, Plaintiff argues that Defendants violated Plaintiff's rights by both acting pursuant to the Jail's policy regarding the use of force, see (id. at 13-14), and also by acting in accordance with the Jail's custom and practice, see (id. at 15-16).

1. Use of Force Policy

As discussed above, to set forth a policy-based claim under
Monell, a plaintiff must identify a policy that deprived him of
his constitutional rights. McTernan, 564 F.3d at 657.  The
policy at issue in this case is the Jail's Use of Force Policy.
GLOUCESTER COUNTY CORRECTIONAL FACILITY POLICY AND PROCEDURES MANUAL, § 4,
No. 457; (Opp'n, Ex. L, ECF No. 94-15) ("Policy").  Plaintiff
challenges the section of the policy titled Authorization and
Limitations of Use of Force — which provides guidance as to
when, and how much, force may be used under the circumstances.
(Policy at 7) ("Use of Force Policy").

However, Plaintiff does not assert that the Use of Force
Policy, itself, is unconstitutional or otherwise deprived him of
his rights, as required for a policy-based Monell claim.
Rather, as Defendants point out, Plaintiff's argument is that
his rights were violated when certain officers took actions that
were contrary to the Use of Force Policy.  In fact, the report
submitted by Plaintiff's own expert concludes that the use of
force used on Plaintiff was "contrary to the use of force policy
and other applicable standards at [the Jail] . . . ." (Horn
Report 12, ECF No. 94-6).

The Court notes that Plaintiff's argument in opposition to
Defendants' motion regarding the Use of Force Policy is
misplaced.  Specifically, Plaintiff argues that summary judgment
is inappropriate because "questions [exist] as to whether the

14

officers' actions conformed to the standards set forth in the jail's Use of Force Policy." (Opp'n 13, ECF No. 94).  Plaintiff then goes on to discuss the amount of physical force used by the officers and the disputed facts of the case.  Plaintiff concludes that "resolution of these disputed facts is the only means through which it can be determined whether the officers found it appropriate, under the Use of Force Policy, to employ the force that ultimately resulted in Mr. Sheppard's injury." (Id. at 14).  However, the question of whether the officers used an appropriate amount of force under the Use of Force Policy is a question of the individual officer's liability, not the County's liability.

Plaintiff has not set forth allegations in his Third Amended Complaint, raised arguments in his opposition, or presented evidence in the record sufficient to raise a question of material fact about whether the Jail's Use of Force Policy, itself, caused his injury.[3]  For example, Plaintiff has not

---

[3] Plaintiff states that "[t]he officers may have believed that they needed to use physical force . . . or that physical force was necessary [under the Use of Force Policy;]" and Plaintiff seems to argue that if the officers believed that the force used was necessary, then they acted in accordance with the Policy. (Opp'n 14, ECF No. 94).  However, the officers' subjective belief about the amount of force required under the Use of Force Policy goes only to the officers' liability, not the County's. See, e.g., (citing Monell) Rodriguez v. Panarello, 119 F. Supp. 3d 331, 343 (E.D. Pa. 2015) ("Municipalities cannot be liable for the unconstitutional actions of their employees, but only for their own unconstitutional policies or customs.").

presented evidence to suggest that the Use of Force Policy provided inadequate guidance to officers about when to use force[4], or called for an unconstitutionally disproportionate amount of force[5].  Instead, Plaintiff's critique of the Use of Force Policy is limited to his expert's opinion that the policy is geared more "toward the use of force by police officers on the street and is not adapted to address uses of force in a jail setting." (Horn Report 10, ECF No. 94-6).  However, even accepting this critique as accurate, there is no evidence in the record to suggest that this rises to the level of a constitutional violation.  Because there is no evidence from which a reasonable jury could conclude that the County is liable for Plaintiff's injury based on the Use of Force Policy, Defendants are entitled to summary judgment as a matter of law as to Plaintiff's Monell claim based on the Use of Force Policy.

_____

[4] See, e.g., Berry v. City of Philadelphia, No. 14-2608, 2016 WL 2939502, at *6 (E.D. Pa. May 20, 2016) (denying motion for summary judgment where plaintiff alleged that certain municipal directives provided inadequate guidance to officers regarding when it is appropriate to discharge a firearm).

[5] See, e.g., Williams v. Guard Bryant Fields, 535 F. App'x 205, 211-12 (3d Cir. 2013) (quoting Groman v. Twp. of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995) ("[A] single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

2. <u>Jail Custom</u>

As discussed above, in order to establish a custom-based claim under <u>Monell</u>, a plaintiff must show that a prison official acquiesced in the widespread custom that caused a constitutional violation. <u>Watson</u>, 478 F.3d at 155-156.  Where the custom "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." <u>Carter v. City of Philadelphia</u>, 181 F.3d 339, 357 (3d Cir. 1999) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989)).

In his Third Amended Complaint, Plaintiff argues that the Jail had a custom of failing to train the correctional officers in the appropriate use of force and of failing to properly supervise the officers. <u>See</u> (Third Am. Compl. ¶ 50-53, ECF No. 57).  In their motion, Defendants contend that summary judgment is appropriate because no evidence exists which suggests that Plaintiff's rights were violated pursuant to a custom or practice of the County. (Mot. Summ. J. 7, ECF No. 89).  However, Defendants' argument with respect to this issue is limited to the following sentences:

> There is no evidence either that could support
> Plaintiff's claim that the County knew of any
> "vicious" propensities on the part of any of the names

[sic] officers and did nothing to correct such conduct.  To the contrary, the County has offered evidence of its Use of Force policy and the training curriculum followed by its officers.

(Mot. Summ. J. 7-8, ECF No. 89).

Plaintiff's arguments, in contrast, are premised upon a "jail-wide indifference to inmates' constitutional rights" see (Opp'n 15, ECF No. 94), demonstrated — in part — by Jail officials' inaction following use of force incidents.  Thus, Defendants do not explicitly address Plaintiff's failure to train and failure to supervise arguments in their motion.

Plaintiff relies on the Horn Report in support of his failure to train or supervise arguments.  The crux of the Horn Report is that Jail officials have demonstrated deliberate indifference through their inadequate supervisory review of use of force incidents.  The Horn Report bases this conclusion on specific factors such as: (1) inadequate Use of Force Report forms[6], which do "not provide sufficient detail or information to permit management staff to make knowing and intelligent

---

[6] The Court does not construe the Third Amended Complaint as raising a challenge to the Jail's policy of reporting use of force incidents.  Although the Horn Report points out deficiencies in the Jail's Use of Force Report forms, neither the Third Amended Complaint, nor Plaintiff's brief in opposition to the instant motion alleges that the Jail's policy of reporting, itself, was the cause of Plaintiff's injuries.  Rather, the inadequate reporting of use of force incidents is framed as a symptom of prison officials' deliberate indifference. See (Horn Report 10, ECF No. 94-6); (Opp'n 9, ECF No. 94); (Pl.'s SOMF ¶ 33, ECF No. 94-2).

determinations about the appropriateness of uses of force;" (2) the absence of a policy requiring routine review of video records of use of force incidents; and (3) the failure of supervisors to make recommendations on training or to conduct further investigation of use of force incidents. (Horn Report 10-11, ECF No. 94-6); (Opp'n 9, ECF No. 94).  The Horn Report concludes that Jail officials' "indifference to the use of force by correction officers . . . led to and w[as] a proximate cause of the serious injury sustained by [Plaintiff]." (Id. at 9).

Thus, the Horn Report makes specific findings with respect to Jail officials' failure to supervise officers.  Additionally, evidence in the record suggests that physical altercations in the strip search room are not uncommon and at least two of the Defendant officers in this case testified that they have been involved in other incidents. (Zavis Tr. 53:10-21, ECF No. 94-7); (Schmidheiser Tr. 48:20-22, ECF No. 94-12); see also Thomas, 749 F.3d at 223 (holding that deliberate indifference may be demonstrated by showing a pattern of violations which puts the municipal employee on notice that a new program is necessary).

Defendants have not addressed Plaintiff's claims of deliberate indifference through Jail officials' inadequate supervisory review, nor have they disputed the findings of the Horn Report.  Thus, they have not met their initial burden of demonstrating that there is no genuine dispute as to any

material fact, see FED. R. CIV. P. 56(a); Celotex, 477 U.S. at
323, and summary judgment as to Plaintiff's failure to supervise
claim is not appropriate at this time. See, e.g., Ewing v.
Cumberland Cty., No. 09-5432, 2015 WL 1384374, at *29 (D.N.J.
Mar. 25, 2015) (denying summary judgment as to plaintiff's
failure to supervise and failure to investigate claims because
facts existed from which a jury could conclude that there was a
culture of ignoring and failing to investigate misconduct);
Beck, 89 F.3d at 974-76 (reversing grant of summary judgment on
municipal liability claim where evidence showed that
investigatory procedures into police misconduct were inadequate;
there was no formalized tracking of complaints for individual
officers; and there were civilian complaints of officer
violence).

Notably, however, neither the Horn Report nor Plaintiff's
brief in opposition to the motion specifically addresses
Plaintiff's failure to train claim.  Rather, the discussion
regarding Jail officials' deliberate indifference is limited to
the context of supervisory review of use of force incidents. See
(Opp'n 9, ECF No. 94).  The Court notes that Plaintiff summarily
concludes, relying on the Horn Report, that the excessive force
used by the officers "was the result of inadequate training . .
. ." (Id. at 10).  However, the Horn Report makes no findings as
to the adequacy of the Jail's training regarding use of force.

Rather, as discussed above, the Horn Report concludes that the amount of force used was inappropriate, and that Jail officials' deliberate indifference to use of force incidents was the proximate cause of Plaintiff's injuries.

Plaintiff has provided no information regarding the type of training provided with respect to the use of force, or the substance or frequency of said training. He has not identified any deficiencies in the training, nor has he described precisely how the deficient training contributed to a violation of his constitutional rights. Because the record is devoid of facts regarding the adequacy of training, the Court will grant summary judgment and dismiss Plaintiff's failure to train claim. See, e.g., Noble v. City of Camden, 112 F. Supp. 3d 208, 225 (D.N.J. 2015) (granting summary judgment where plaintiff failed to present evidence that there was a lack of training).

B. State Law Claims for Negligence and Gross Negligence

In their motion, Defendants arguments for dismissal of Plaintiff's state law claims for negligence and gross negligence appears to be two-fold. First, Defendants argue that Plaintiff's state law claims of negligence or gross negligence must be dismissed against all Defendants because Plaintiff has not properly explained the basis of his claims. (Mot. Summ. J. 8, ECF No. 89). In his opposition, Plaintiff contends that the acts or omissions which form the basis of his claims are simply

the disputed facts of the case; _i.e._ the events which caused Plaintiff's injury. (Opp'n 17, ECF No. 94).  The Court agrees that the factual underpinnings of Plaintiff's state law negligence and gross negligence claims are contained in Plaintiff's recitation of the facts of the case, are supported in the record, and have been adequately presented.  Accordingly, Defendants are not entitled to summary judgment on this basis.

Next, Defendant cites the New Jersey Tort Claims Act ("NJTCA") which provides that a "public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J. STAT. ANN. § 59:3-3.  Presumably, Defendants mean to argue that the Defendant Officers are entitled to immunity under the NJTCA; however, Defendants do not present any argument in support of this proposition.

This Court notes that in ascertaining whether good faith immunity exists, the New Jersey Supreme Court opined that "[a] public employee either must demonstrate 'objective reasonableness' or that he behaved with 'subjective good faith.'" Alston v. City of Camden, 168 N.J. 170, 773 A.2d 693, 703 (2001).  The New Jersey Supreme Court further clarified that "[t]he same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the Tort Claims Act." Wildoner v. Borough of Ramsey, 162 N.J. 375, 387, 744 A.2d 1146, 1153 (2000).

As Plaintiff points out in his opposition, Defendants do not offer any explanation as to how Plaintiff acquired his injury, whereas Plaintiff has provided factual allegations and testimony as to his version of the events.  Thus, a genuine issue of material fact exists as to what really transpired, and as to the objective reasonableness of Defendants' actions. Because questions of material fact exist as to this critical event and Defendants' actions, summary judgment is improper. See, e.g., Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 445 (D.N.J. 2011) (collecting cases) (finding grant of immunity under NJTCA unavailable where material facts existed regarding the reasonableness of defendant's actions); see also, e.g., Giles v. Kearney, 571 F.3d 318, 327 (3d Cir. 2009) (finding summary judgment inappropriate on a prisoner's claim of excessive force where there was a genuine dispute of fact as to the necessity for the force, and a reasonable trier of fact could have concluded, based on the prisoner's testimony, that the force used was excessive).

C. State Law Claims of Assault and Battery, and Abuse of Process

As set forth above, the NJTCA imposes liability for a public entity "for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private

individual under like circumstances." N.J. Stat. Ann. § 59:2-2(a).
Section 59:2-2a of the NJTCA expressly adopts the general
concept of vicarious liability for public entities. Hoag v.
Brown, 397 N.J. Super. 34, 935 A.2d 1218, 1230 (N.J. Super. Ct.
App. Div. 2007); Tice v. Cramer, 133 N.J. 347, 627 A.2d 1090,
1094 (1993).  The NJTCA also provides that a public entity is
"not liable for the acts or omissions of a public employee
constituting a crime, actual fraud, actual malice, or willful
misconduct." N.J. Stat. Ann.  59:2-10.  Thus, there can be no
vicarious liability by a public entity for intentional torts
committed by its employees.

As Defendants point out, Plaintiff's state law claims for
abuse of process, and for assault and battery are based on
"alleged intentional, willful and/or malicious conduct of the
Defendant officers." (Mot. Summ. J. 9, ECF No. 89).  Thus, the
County cannot be liable for this intentional conduct under the
NJTCA. See N.J. Stat. Ann.  59:2-10.  Further, Defendants note
that, to the extent Plaintiff is seeking punitive damages, these
types of damages are not recoverable against the County. See
N.J. Stat. Ann. § 59:9-2 ("No punitive or exemplary damages shall
be awarded against a public entity.").  The Court agrees, and
Plaintiff does not dispute these arguments.  Accordingly,
summary judgment will be granted in this respect and Plaintiff's
state law claims for abuse of process, and for assault and

battery against the County will be dismissed with prejudice. <u>See</u> <u>e.g.,</u> <u>Merman v. City of Camden</u>, 824 F. Supp. 2d 581 (D.N.J. 2010) (claims premised on intentional conduct were precluded by NJTCA).

The Court notes that in this section of their motion, Defendants request that all state law claims against the County be dismissed.  However, the NJTCA does not immunize the County from liability for its employees' negligent or grossly negligent conduct. <u>See</u> <u>Graham v. Huevel</u>, 2011 WL 1256607, at *10 (D.N.J. Mar. 28, 2011) (noting that a "claim for negligent supervision is an independent claim for direct liability, rather than one for vicarious liability under a theory of respondeat superior."); <u>Hoag</u>, 935 A.2d at 1230 (same).  Plaintiff's theory — that the County is liable for its employees' failure to properly supervise Jail officers with regard to use of force incidents — states a claim for negligent supervision that is not barred by the NJTCA. <u>See, e.g.,</u> <u>Ewing</u>, 2015 WL 1384374, at *30. Defendants do not challenge this claim in their motion; therefore, it will proceed.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants motion for partial summary judgment will be granted in part and denied in part. Specifically, summary judgment is granted in favor of Defendants with respect to Plaintiff's <u>Monell</u> claims against the County

based on the Use of Force Policy, and Plaintiff's <u>Monell</u> claims against the County based on a failure to train.  These claims are dismissed without prejudice.  Summary judgment is also granted in favor of Defendants with respect to Plaintiff's state law claims against the County for abuse of process, and assault and battery; and these claims are dismissed with prejudice. Defendant's motion for summary judgment is denied with respect to Plaintiff's <u>Monell</u> claim against the County based on failure to supervise, and is denied with respect to Plaintiff's state law claims for negligence and gross negligence against all Defendants.

An appropriate Order follows.

                                    __s/ Noel L. Hillman_____
                                    NOEL L. HILLMAN
                                    United States District Judge

Dated: July 19, 2016
At Camden, New Jersey